ESTATE OF Duane R. BREITENFELD, By and Through his Personal Representative, Sharon K. BREITENFELD, and Sharon K. Breitenfeld, Appellants,

v.

AIR–TEK, INC., Appellee.

No. S–1812.

Supreme Court of Alaska.

May 20, 1988.

---

Don C. Bauermeister, Laurel J. Peterson, P.C., Anchorage, for appellants.

Sanford M. Gibbs, Hagans, Brown, Gibbs & Moran, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

This wrongful death action stems from an airplane crash that occurred at Soldotna Airport on February 4, 1985. Sharon K. Breitenfeld, individually and on behalf of the estate of her husband, Duane R. Breitenfeld, a passenger who died in the crash, sued Air–Tek, Inc. Air–Tek, Inc. (Air–Tek) is an electrical and avionics installation and repair contractor. It has periodically performed electrical repair work at the Soldotna Airport when requested to do so by the maintenance supervisor for the City of Soldotna (City), Hershel Miller. According to Miller, Air–Tek did all of the City's electrical work, but had no written contract with the City concerning electrical maintenance at the airport. There was no particular pattern to the City's requests to Air–Tek for work at the airport.

The Breitenfeld complaint alleged, *inter alia,* that Air–Tek undertook and was responsible for the obligation of the City to maintain and service weather observation equipment at the airport; that Air–Tek was contractually obligated to inspect and maintain the equipment, and to purchase and install replacement parts when necessary; that Air–Tek negligently failed in its duties and obligations to maintain the equipment; and that this negligence directly and proximately caused the February 4, 1985, airplane crash.

An inoperative ceiling detection light at the Soldotna airport allegedly contributed to the cause of the crash in question. A ceiling detection light is a type of beacon used to measure the height and depth of the cloud cover over the airport.[1] Air–Tek did not install this ceiling detection light, but in November 1983, it did install the remote control device used to operate the light. Manual operation of the light was still possible subsequent to installation of the remote control device, although Miller was apparently unaware of this fact. About two weeks before the airplane crash, Miller was notified by an airline employee that the remote control device was missing. According to Miller, he then telephoned Air–Tek owner Thomas Dwinnell, who informed Miller that he would see if the device was missing and, if so, obtain a replacement. Miller states that Dwinnell called back later that day or the next day, confirmed that the device was missing and said that he would order a replacement.[2] The crash occurred before the remote control device was replaced.

Air–Tek moved for summary judgment on the ground that it did not enter into a contract with the City to maintain, repair, or inspect the weather observation equipment at the airport and accordingly owed no duty to any third party (such as the Breitenfelds) to perform such services. Air–Tek also asserted that it had no way of knowing the weather observation equipment was not functioning absent a call

---

1. When a commercial pilot radios a request for a cloud-height reading, a weather observer at the airport turns the light on for five minutes to allow the pilot to take a reading. The light at the Soldotna airport is operated by a remote control device similar to a garage door opener.

2. In its reply to Breitenfeld's opposition to its motion for summary judgment, Air–Tek asserted that the facts concerning the phone calls between Miller and Dwinnell are undisputed. In its brief on appeal, Air–Tek similarly states, "it was uncontested that Air–Tek immediately informed Hershel Miller that the remote control device had to be backordered and at his request ordered a replacement on the day the device was reported missing or the following day."

from airport personnel informing them of that fact, and that it received no such call or request for repair of the ceiling detection light prior to the crash.

The City as co-defendant filed a partial opposition to Air–Tek's motion for summary judgment. The primary thrust of this opposition was to contradict any express or implied assertion on Air–Tek's part that it did not participate in efforts to replace the remote control device for the ceiling detection light prior to the February 4, 1985 crash. In support of its position, the City filed an affidavit of maintenance supervisor Miller, in which Miller averred that in January 1985 he requested Air–Tek to search for the device and was told by Dwinnell (owner of Air–Tek) that he would personally check to see if the device was missing and, if so, order a replacement.

Breitenfeld also opposed Air–Tek's motion on the ground that numerous issues of material fact precluded summary judgment. Among the issues identified by Breitenfeld were whether Air–Tek received a request to repair the ceiling light, whether Air–Tek agreed to repair the light in January 1985, whether Air–Tek was negligent in performing such an agreement, and whether Air–Tek undertook any responsibility to Breitenfeld.[3]

The superior court concluded that Air–Tek did not have an ongoing contract with the City to inspect and maintain any equipment at the airport, but had from time to time entered discrete contracts to perform specific services regarding lighting and electrical equipment. Assuming for purposes of deciding the summary judgment motion that Miller's understanding of what Dwinnell promised was accurate, the superior court further concluded that Dwinnell undertook to replace the remote control device and did replace it. The superior court noted that Miller's deposition contained no indication that Miller viewed the replacement as an urgent matter or that he was in any way dissatisfied with the promise to order a new unit.

The superior court granted Air–Tek's motion for summary judgment, stating that a number of disputed issues of fact existed but that none of them were material and that Air–Tek was entitled to judgment dismissing the Breitenfeld claims against it. The superior court also expressed its view that, contrary to the form of the parties' arguments, the issue of "responsibility of a party to third parties based on an undertaking to a second party" was not the primary issue in the case.[4] The superior court explained in relevant part:

[T]his is not a situation in which Air Tek promised Soldotna that it would do something, failed to do it, and then some third party is arguing that he or she should be the beneficiary of that promise.

... Air Tek contracted to do nothing more than furnish a radio transmitter switch system as a substitute for a manual switch, they did that. It worked for two years, apparently, without problem. Through no fault of Air Tek's it was lost. Soldotna Airport, through ... Miller, ordered a replacement. The order was placed; ultimately, was filled but not until [after] the accident in this case.

Consequently, Air Tek never undertook to do anything for anyone and failed to do it.

Breitenfeld confines this appeal to the questions of whether there exist any genuine issues of material fact as to the duty undertaken by Air–Tek, as well as whether any genuine issues of material fact exist as to whether Air–Tek was negligent in carrying out its assumed duty.

3. At oral argument and in its reply to the Breitenfeld opposition, Air–Tek argued that to the extent Air–Tek undertook to perform any service for the City, it undertook only to order a replacement remote control unit and that this undertaking gave rise to no duty to aircraft passengers.

4. Earlier in the hearing, the superior court identified the two questions it sought to answer as whether an agreement, express or implied, existed between Air–Tek and the City that would support some kind of third-party action; and, alternatively, whether Air–Tek undertook to do anything that created a responsibility to the airplane's passengers and failed to perform such undertaking.

In reviewing the superior court's grant of summary judgment, this court must determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law. *Moore v. State,* 553 P.2d 8, 15 (Alaska 1976); *see* Alaska R.Civ.P. 56(c). All reasonable inferences must be drawn in favor of the non-moving party and against the movant. *Clabaugh v. Bottcher,* 545 P.2d 172, 175 (Alaska 1976); *Wilson v. Pollet,* 416 P.2d 381, 384 (Alaska 1966). If reasonable minds could not draw different inferences and reach different conclusions from the evidence, the court may resolve the issue as a matter of law rather than reserve it for trial. *See Webb v. City and Borough of Sitka,* 561 P.2d 731, 734–35 (Alaska 1977) [quoting *Gross v. Southern Ry. Co.,* 414 F.2d 292, 297 (5th Cir.1969)]. Whether the conduct at issue is negligent or reasonable is a question for the trier of fact, if reasonable minds could draw different inferences from the evidence presented. *Webb,* 561 P.2d at 735.

Whether a party voluntarily assumed to perform a particular act is a question of fact.[5] By its assumption to act, the party may become subject to a duty to act carefully.[6] Although the precise nature and extent of that duty is a question of law, it depends on the nature and extent of the act undertaken, a question of fact.[7]

As noted previously, Breitenfeld's position is that Air–Tek voluntarily, or by oral contract, assumed a duty to make the ceiling detection light operable "as fast as it knew how." In resolving the summary judgment issue against Breitenfeld, the superior court expressed the narrower view that Air–Tek undertook only to order a replacement for the missing remote control device, a duty that it fulfilled.

Our review of the record in the light most favorable to Breitenfeld persuades us that there is no genuine factual issue concerning the services Air–Tek agreed to perform. No evidence suggests that Air–Tek was ever requested to "make the ceiling light operable."

As Breitenfeld has cast the relevant events, upon receiving Miller's call concerning the remote control device, Air–Tek agreed to search for it and order a replacement if it was not located. The record contains no evidence suggesting that this undertaking was not adequately fulfilled. Although the date of ordering the replacement remote control unit was not established, Miller received a purchase order indicating that the device had been backordered since it was not immediately available. Miller never questioned whether the device had been ordered as requested. He and Dwinnell apparently did not discuss how much time they expected it would take to obtain the replacement device once the order had been placed. Moreover, as the superior court observed, Miller at no time indicated that this ordering arrangement was unsatisfactory or inquired whether manual operation of the device was possible in the meantime.[8]

---

5. *LaMoureaux v. Totem Ocean Trailer Express,* 651 P.2d 839, 840 (Alaska 1982).

6. *Adams v. State,* 555 P.2d 235, 240 (Alaska 1976).

7. *Williams v. Municipality of Anchorage,* 633 P.2d 248, 251 (Alaska 1981). Similarly, this court in the past has said that a dispute as to existence or terms of an oral contract involves a question of fact. *Gray v. Fields,* 440 P.2d 855, 857 (Alaska 1968); *Howarth v. First Nat'l Bank of Anchorage,* 540 P.2d 486, 490 (Alaska 1975), *aff'd,* 551 P.2d 934 (Alaska 1976).

8. Breitenfeld suggests that Air–Tek breached a duty to inform the City that the ceiling detection light could be operated manually. It makes this argument in the context of asserting that the scope of the duty undertaken by Air–Tek extended beyond the express promises of searching for the missing device and ordering a replacement, and that the jury should determine what the parties' agreement was—and accordingly whether Air–Tek's inaction constituted a breach—because conflicting evidence exists. Breitenfeld fails to substantiate this claim with any evidence in the record that the parties' understanding at the time of contracting extended beyond their express agreement.

In this regard, the superior court noted that this claim by Air–Tek sounded in "negligent misrepresentation by omission," which would have to be pled separately from operational negligence. The court concluded that the claim could be rejected on that ground alone since the complaint could not be construed to charge negligent misrepresentation, and in any event, no evidence existed to support such a claim.

In conclusion, we hold that the superior court did not err in holding that no issue of "material" fact precluded summary judgment. In our view, reasonable minds could not reach divergent conclusions concerning the nature of the acts undertaken by Air–Tek, or their performance. Air–Tek undertook only to search-and-order, which it did.

AFFIRMED.