Mary E. **MULVIHILL, Personal Representative of the Estate of Jimmie Duwayne Mulvihill, Deceased; Susan G. Altman, Personal Representative of the Estate of Bruce Allen Altman, Deceased; and Mayrene E. Shawver, Individually, Appellants,**

v.

**UNION OIL CO. OF CALIFORNIA, dba Unocal Chemicals Division, a corporate entity; Kenai Merit Inn Corporation, a corporate entity; City of Soldotna, a Municipal Corporation; Central Peninsula Sports Center Rink, Inc., an Alaskan Corporation; Micki E. Kobylk, dba The Nightwatch, Inc.; and Brad Frates, Individually, Appellees.**

No. S–5303.

Supreme Court of Alaska.

Oct. 8, 1993.

Laurel J. Peterson, Anchorage, for appellants.

Stephen M. Ellis, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, for appellees.

Before RABINOWITZ, BURKE, MATTHEWS and COMPTON, Justices.

BURKE, Justice.

On December 4, 1987, Union Oil Company of California ("Unocal") sponsored its annual Christmas party for its Alaskan employees, their spouses and/or friends. The party was held at the Central Peninsula Sports Center ("Sports Center") in Soldotna, Alaska. Unocal contracted with Kenai Merit Inn to cater the event. Kenai Merit Inn agreed to provide all services associated with the party, including set-up and clean-up, cocktail service, hors d'oeuvres, a buffet dinner, floral arrangements and live entertainment.

In order to serve alcohol at the party, Kenai Merit Inn obtained a "Caterer's Permit" from the Alaska Alcoholic Beverage Control Board. As guests arrived, they were provided with tickets for three drinks. Additional drinks were available on a cash basis. One carafe of wine was provided during dinner for every six to eight people. The carafes were placed on the table after the salads were served; they were not refilled.

Brad Frates, a Unocal mechanical engineer, attended the party with his wife, Melissa. The Frates sat at the same table as Tony LeMay, another Unocal employee. Shortly after midnight, the Frates decided to leave the party and go to a local tavern, the Nightwatch, with David Rice, a Unocal employee, and his wife. The Nightwatch is about two miles from the Sports Center.

LeMay saw the couples leaving and asked if he could join them. LeMay accompanied the Frates in their vehicle to the Nightwatch. Brad Frates suggested this arrangement because he thought LeMay was "somewhat intoxicated," although LeMay was not "stumbling over himself or

drooling." Two other Unocal employees asked Frates to make sure that LeMay was not driving.

The group arrived at the Nightwatch between 12:30 and 1:00 a.m. Frates and Rice each drank a beer; LeMay drank two and a half beers. They left between 1:30 and 2:00 a.m. The Frates drove LeMay back to the Sports Center. From there, Brad Frates drove LeMay home in LeMay's vehicle, while Melissa Frates followed in the Frates' vehicle. The trip to LeMay's residence in Kenai took about 15 minutes.

During the trip, LeMay expressed a desire to drive to Anchorage to see his fiancé. Frates told LeMay to get some sleep and go to Anchorage in the morning. LeMay eventually assured Frates that he would do this. Upon arriving at LeMay's residence, Frates gave LeMay his keys back. Before they left, Brad and Melissa Frates watched LeMay go up the stairs and open his apartment door.

Later that morning, Lemay left his residence and drove toward Anchorage. Shortly after 4:00 a.m., at Mile 48.8 on the Seward Highway, LeMay fell asleep at the wheel, crossed the center line, and struck a vehicle driven by Jimmie Mulvihill. LeMay, Mulvihill, and Mulvihill's front seat passenger, Bruce Altman, were killed in the crash. The other passenger in Mulvihill's vehicle, Mayrene Shawver, was injured but survived. LeMay had a blood alcohol level of .127 at the time of the collision.

Mayrene Shawver and the personal representatives of the estates of Jimmie Mulvihill and Bruce Altman[1] sued Unocal, the Frates, The Nightwatch, Kenai Merit Inn, and the Sports Center. This appeal concerns only the suits against Unocal and Brad Frates. Unocal and Brad Frates moved for and were granted summary judgment on all issues. Mulvihill appeals. We affirm.

## UNOCAL

■ Unocal, as a social host, owed no legal duty to Mulvihill. Alaska Statute 04.-21.020 states, in part,

> A person who provides alcoholic beverages to another person may not be held civilly liable for injuries resulting from the intoxication of that person unless the person who provides the alcoholic beverages holds a license authorized under AS 04.11.080–04.11.220, or is an agent or employee of such a licensee and
>
> (1) the alcoholic beverages are provided to a person under the age of 21 years . . .; or
>
> (2) the alcoholic beverages are provided to a drunken person. . . .

Since Unocal did not hold a liquor license, it is not liable as a social host for injuries resulting from LeMay's intoxication.[2] *See Gordon v. Alaska Pacific Bancorporation,* 753 P.2d 721, 723 (Alaska 1988) (stating that Alaska Statute 04.21.020 "exempts from civil liability a person who does not hold a liquor license who furnishes liquor to an intoxicated person who, as a result of his intoxication, injures a third party").

■ Mulvihill attempts to circumvent this conclusion by arguing that Unocal, if not liable as a host, might be liable as the employer of an intoxicated person who caused injuries. This argument fails for several reasons. First, Mulvihill has no colorable claim under the doctrine of respondeat superior. In *Fruit v. Schreiner,* 502 P.2d 133, 139–40 (Alaska 1972), we examined the rationales behind respondeat superior, noting two theories "which carry

---

**1.** Appellants will be designated collectively as "Mulvihill."

**2.** Mulvihill attempts to avoid AS 04.21.020 by arguing that, since it is undisputed that Kenai Merit Inn obtained the beverage dispensary permit for Unocal's benefit, "Unocal was the effective holder who received the actual benefits of the permit." This argument is without merit because it twice ignores the plain language of the statute. First, AS 04.21.020 extends poten-

tial liability only to the agents or employees of the licensee. Unocal was neither. Second, a person may be held liable under AS 04.21.020 only if he holds a license under AS 04.11.080–.220. Kenai Merit Inn obtained a "Caterer's Permit" pursuant to AS 04.11.*230.* Thus, even accepting Mulvihill's novel theory that Unocal was the "effective holder" of the permit, no liability would attach.

the greatest weight in contemporary legal thought":

the "control" theory which finds liability whenever the act of the employee was committed with the implied authority, acquiescence or subsequent ratification of the employer, and the 'enterprise' theory which finds liability whenever the enterprise of the employer would have benefitted by the context of the act of the employee but for the unfortunate injury.

*Id.* However far these theories are stretched, they cannot encompass LeMay's drive to Anchorage to see his fiancé.

Second, it would be unwise and unfair to create what amounts to an exception to Alaska Statute 04.21.020 by holding employers to a different liability standard than other social hosts. Other courts which have considered the issue have refused to hold employers liable where other social hosts would not be. *See, e.g., Thies v. Cooper*, 243 Kan. 149, 753 P.2d 1280, 1284 (1988) (noting that the majority of jurisdictions have refused to impose liability on employers for serving liquor to employees who then injure third persons); *Meany v. Newell*, 367 N.W.2d 472, 473 (Minn.1985) (holding that an employer is not liable for injuries resulting from acts of an intoxicated employee even though the employer served the employee liquor at a Christmas party at the workplace during normal working hours); *Bruce v. Chas Roberts Air Conditioning, Inc.*, 166 Ariz. 221, 227–28, 801 P.2d 456, 462–63 (Ariz. App.1990) (holding that an employer does not have a legal duty to protect third persons from injuries caused by an employee who leaves his employer's business in an intoxicated condition).

We consider it significant that when LeMay became visibly intoxicated two Unocal employees told Frates to make sure that LeMay was not driving. This would be a more difficult case if they had allowed LeMay to drive home from the party knowing he was visibly intoxicated. But given the employees' conscientious attempt to insure that LeMay did not drive, we decline to hold Unocal liable for Mulvihill's injuries. As another court, dealing with similar facts, so aptly stated:

To hold otherwise would practically impose a duty upon [the employer] not only of getting [the employee] safely home, but also of tucking him in bed, locking his bedroom door, and securing the keys to his truck, or of setting up an all-night vigil in swing shifts to make sure he didn't leave.

*Southern Bell Tel. & Telegraph v. Altman*, 183 Ga.App. 611, 359 S.E.2d 385, 386 (1987) (holding that an employer is not liable for injuries caused by an employee who became intoxicated at employer-sponsored banquet; co-workers took employee for coffee, drove him home, then watched him walk to his front door).

### FRATES

▮▮▮▮ By agreeing to drive LeMay home, Frates became a "volunteer." We rely on Restatement (Second) of Torts § 324A (1965) to determine the nature of a volunteer's duty, and the extent of his liability for a negligent undertaking.[3] *See, e.g., City of Kotzebue v. McLean*, 702 P.2d 1309, 1313 n. 4 (Alaska 1985). This section states, in part:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm.

**3.** Mulvihill also relies on Restatement (Second) of Torts, sections 323 and 319. Neither section applies to this case. Section 323 would apply only if Frates' liability to LeMay were at issue. Further, section 319 would apply only if the accident occurred while LeMay was in Frates' control. Since the accident occurred after Frates dropped LeMay off, section 319 is not relevant. *See, e.g., Leake v. Cain*, 720 P.2d 152, 161 (Colo.1986) (holding police officers who took temporary charge of a drunken youth at a party owed duty to the public under § 319 while youth was actually in their custody, but owed no duty to the public after releasing him to his brother).

Frates only agreed to deliver LeMay home. He and his wife performed this service, waiting until LeMay opened his front door before they left him. In so doing, Frates did all he could do; he completely and conscientiously discharged his duty. Since reasonable people could not differ on the nature and extent of this voluntarily undertaken duty, summary judgment was properly granted. *Estate of Breitenfeld,* 755 P.2d 1099, 1102–03 (Alaska 1988).[4]

Contrary to Mulvihill's assertion, there is nothing in the record to indicate that Frates agreed to perform additional services. Specifically, Frates did not agree to insure that LeMay did not drink any more beer. Further, implying such a duty would be poor policy, as it would jeopardize the "designated driver" movement. If Frates were held liable for Mulvihill's injuries because he allowed LeMay to drink two beers before he drove LeMay home, then every designated driver who agreed to drive a friend home after a night of drinking

would risk liability if that friend chose to drive after the designated driver left. Such a result would undermine society's well-founded desire to encourage sober people to volunteer to drive their intoxicated friends home. As one court has said, "persons who otherwise have no liability should not be discouraged from making reasonable efforts to remove an obviously intoxicated driver from behind the wheel." *Prelvitz v. Milsop,* 831 F.2d 806, 810 (8th Cir.1987).

AFFIRMED.

MOORE, C.J., not participating.

---

4. Mulvihill frequently asserts that the scope and breach of any duties Frates may have assumed is a jury question. In this case, however, the nature and extent of the act undertaken, which is a question of fact, is not in dispute. What is in dispute is the "precise nature and extent" of Frates' duty to act. This is a question of law which can be decided at the summary judgment stage. *See Estate of·Breitenfeld,* 755 P.2d 1099 (Alaska 1988).