**Scott C. McGLOTHLIN, Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE and Ogden Facility Management of Alaska, Inc., Appellees.**

No. S–8660.

Supreme Court of Alaska.

Nov. 19, 1999.

Susan M. West, Guess & Rudd, P.C., Anchorage, for Appellees.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

Scott McGlothlin injured his back in November 1994 while loading a heavy scoreboard at the Sullivan Sports Arena in Anchorage. The scoreboard belonged to his employer, Carr–Gottstein Foods Co. (Carrs). McGlothlin sued the Municipality of Anchorage (the owner of the arena) and Ogden Facility Management (the operator) under several tort theories. The defendants moved for summary judgment, arguing that they owed McGlothlin no duty. The superior court granted the motion, and awarded the defendants twenty percent of their attorney's fees pursuant to Civil Rule 82. McGlothlin appeals both the summary judgment and the attorney's fees award. Because McGlothlin failed to present any evidence showing that he was owed a duty, and because the trial court did not abuse its discretion in awarding attorney's fees, we affirm.

## II. FACTS AND PROCEEDINGS

### A. Factual Background [1]

In the early afternoon of November 30, 1994, Scott McGlothlin and his co-worker Mark Lulay were instructed by their supervisors to pick up a scoreboard at the Sullivan Arena. The scoreboard belonged to McGlothlin's employer, Carrs, and McGlothlin and Lulay were told to deliver it to West Anchorage High School for the Great Alaska

Charles W. Coe, Anchorage, for Appellant.

1. Because this case was decided on summary judgment, the description of the facts draws all reasonable inferences in favor of the non-movant, McGlothlin. *See Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell,* 956 P.2d 1199, 1200 (Alaska 1998) (citations omitted). Prominent among such inferences is that the workers McGlothlin encountered at the Sullivan Arena were Ogden employees, a fact not definitively established in discovery.

Shootout, an event sponsored by Carrs.[2] Together they took a two-wheel dolly and drove to the arena in the company van.

At the arena, McGlothlin and Lulay located a service ramp leading up to a closed garage door. McGlothlin pressed a buzzer at the service door, and an unidentified Ogden employee answered. McGlothlin indicated he was there to pick up a scoreboard for Carrs, but the man had no knowledge of it. However, he located a second unidentified Ogden employee from within the arena who did.

The two Ogden employees then left, and a few minutes later the second employee, joined by a third unidentified employee, returned rolling out the scoreboard. They brought the scoreboard out to the service ramp just inside the garage door on a wheeled rack which appeared specifically designed for the scoreboard. The scoreboard itself was approximately six to seven feet long, four feet high, and a few feet wide. The Ogden employees did not warn McGlothlin or Lulay of the scoreboard's weight, nor did they offer assistance. On their part, neither McGlothlin nor Lulay made any inquiries or asked for help. The Ogden employees then left.

McGlothlin backed the van up so that the rear of the van was within a few feet of the scoreboard just inside the garage door. The area was clean, free from debris, and the floor was dry and flat. McGlothlin then went to the rear of the van, "got down in position" and felt how heavy the scoreboard was, ultimately estimating it to weigh approximately 400 pounds. The rack was too long to fit into the van without being turned on its side, so McGlothlin and Lulay removed the scoreboard from the rack onto the floor. Because of its weight, McGlothlin briefly looked around for a fork lift or anyone who might assist them in loading the scoreboard into the van; finding no one nor any equipment, he returned to the van to begin loading.

McGlothlin lifted the end closest to the rear of the vehicle with his back to the van, while Lulay faced the van lifting the farther edge of the scoreboard. As they began to lift the scoreboard, McGlothlin gave a "help me" look to the third Ogden employee, who had returned.[3] However, neither McGlothlin nor Lulay verbally requested assistance or asked for any equipment. The third Ogden employee left without saying anything.

McGlothlin and Lulay proceeded to lift the scoreboard, trying to place it diagonally into the back of the van. The floor of the van was approximately three-and-one-half feet above the ground. McGlothlin, moving backwards with his back to the van, kept one foot on the ground and, bending over, put his other leg into the van so that he got his end of the scoreboard onto the van floor. He then felt a sharp, piercing pain in his center, lower back. McGlothlin pulled the scoreboard a bit more into the van and then fell to his knees on the ground. After a few minutes, he got up to assist Lulay, who was trying to finish pushing the scoreboard into the van by himself. At this point, the third Ogden employee returned and McGlothlin verbally requested his help. Lulay and the Ogden employee then finished loading the scoreboard into the van.

After the scoreboard was secured in the van, McGlothlin and Lulay delivered it to West High, where Lulay and another man unloaded it. McGlothlin and Lulay then returned to Carrs and McGlothlin reported his injury to his boss. He was sent home early, and he remained off work for several days. After visiting his family physician with complaints of lower back pain, McGlothlin filed the appropriate workers' compensation form

---

**2.** McGlothlin had been employed by Carrs for several years, primarily in the mail room, and his duties included picking up, sorting, and delivering interoffice mail. On occasion, he would be assigned various other tasks such as setting up for functions and moving offices.

**3.** The deposition testimony of McGlothlin is somewhat contradictory on this particular order of events. It is unclear whether McGlothlin looked around for a forklift before or after he made his "help me" look to the third Ogden employee, or whether he had even started lifting when he gave this look.

documenting the injury. McGlothlin continues to complain of chronic lower back pain.

## B. *Procedural Background*

McGlothlin sued the Municipality of Anchorage and Ogden Facility Management (collectively, MOA/Ogden) in November 1996 for damages resulting from his injuries. The Municipality of Anchorage owns the George M. Sullivan Sports Arena, and has contracted with Ogden Facility Management of Alaska, Inc. to operate the facility. After deposing McGlothlin and conducting other discovery, MOA/Ogden moved for summary judgment. The court heard oral argument in March 1998 and issued an order that same day granting MOA/Ogden's motion. Subsequently, MOA/Ogden filed a motion for costs and fees pursuant to Rules 79 and 82. The court entered judgment against McGlothlin and awarded attorney's fees of $4,242.50 to MOA/Ogden. This appeal followed.

## III. *STANDARD OF REVIEW*

We review a summary judgment *de novo*.[4] Drawing all reasonable inferences in favor of the non-movant, this court determines whether the parties genuinely dispute any facts material to a viable legal theory and, if not, whether the undisputed facts entitle the movant to judgment as a matter of law.[5] The moving party bears the initial burden of proving through admissible evidence (1) the absence of genuine factual disputes, and (2) its entitlement to judgment as a matter of law.[6] Once the moving party has established a prima facie case, "the non-

movant is 'required, in order to prevent entry of summary judgment, to set forth specific facts showing that he could produce admissible evidence reasonably tending to dispute or contradict the movant's evidence, and thus demonstrate that a material issue of fact exists.' "[7] Where a defendant moves for summary judgment, the plaintiff must produce facts of his own in controversion to the relevant facts and circumstances set forth in the defendant's affidavit.[8] Assertions of fact in unverified pleadings and memoranda are insufficient to defeat a motion for summary judgment.[9]

We review a trial court's award of attorney's fees for abuse of discretion.[10] We will reverse a manifestly unreasonable award.[11] However, awards made pursuant to the schedule in Alaska Civil Rule 82(b) are presumptively correct.[12]

## IV. *DISCUSSION*

### A. *The Superior Court Did Not Err in Granting Summary Judgment in Favor of MOA/Ogden.*

The superior court held that MOA/Ogden did not owe McGlothlin any duty of care to assist him, to warn him, or to control the loading operation. The superior court further found that McGlothlin's injury resulted from his own act of loading his employer's scoreboard at his employer's direction.

McGlothlin argues that genuine issues of material fact exist as to whether MOA/Ogden owed him a duty under four separate, albeit overlapping, theories of liability: (1) retained

4. *See Arctic Tug & Barge,* 956 P.2d at 1200 (citations omitted).

5. *See id.*

6. *See Shade v. Co & Anglo Alaska Serv. Corp.,* 901 P.2d 434, 437 (Alaska 1995) (citations omitted).

7. *Jennings v. State,* 566 P.2d 1304, 1309 (Alaska 1977) (quoting *Howarth v. First Nat'l Bank of Anchorage,* 540 P.2d 486, 489–90 (Alaska 1975)) (internal brackets omitted).

8. Alaska R. Civ. P. 56(e).

9. *See id.; see also State, Dep't of Highways v. Green,* 586 P.2d 595, 606 n. 32 (Alaska 1978) (citations omitted).

10. *See Byars v. Byars,* 945 P.2d 792, 795 (Alaska 1997).

11. *See Feichtinger v. Conant,* 893 P.2d 1266, 1268 (Alaska 1995) (citations omitted).

12. *See Byars,* 945 P.2d at 795.

control, (2) voluntary assumption of a duty, (3) simple negligence, and (4) negligent entrustment. We disagree. As discussed below, McGlothlin failed to introduce any evidence raising material factual disputes under any viable legal theory. Therefore, we affirm the superior court.

1. *MOA/Ogden owed McGlothlin no duty.*

██ This court's decision in *Brock v. Weaver Bros., Inc.*[13] controls the disposition of this case. In *Brock*, the plaintiff, an employee of Alaska International Air (AIA), was injured during a pipe-loading operation.[14] Brock alleged that when the injury occurred he was using "equipment 'owned or controlled by one or more of the defendants' and that the negligence of Weaver Brothers or another defendant caused his injury."[15] Weaver Brothers moved for summary judgment, contending that it did not exercise control nor have the right to exercise control over Brock's operations when the accident occurred.[16] In support of its motion, Weaver Brothers submitted uncontroverted affidavits that at the time of the injury Brock was an employee of AIA; that AIA owned all of the equipment used in the loading operation; that all of the employees involved were AIA employees; that no contract between AIA and Weaver Brothers gave the latter any right to control the loading operations of AIA; and that Weaver Brothers neither had the right to control the loading operation, nor had actually exercised control.[17] In his opposition, Brock failed to set forth specific facts demonstrating a material issue of fact which, if resolved in Brock's favor, would result in liability to the Weaver Brothers.[18] We affirmed the superior court's grant of summary judgment.[19]

In the present case, MOA/Ogden submitted three affidavits in support of its motion

for summary judgment. Richard Watts, a Carrs supervisor involved with promoting the "Carrs Great Alaska Shootout," stated that the scoreboard was the property of Carrs, and that to the best of his knowledge Carrs delivered the scoreboard to the arena for each Shootout tournament and retrieved it afterwards. Kim Digel, McGlothlin's immediate supervisor, stated that she had instructed McGlothlin to go to the arena with Lulay to pick up the scoreboard, and that she did not expect anyone at the arena to assist or supervise her employees with this task. Finally, Dennis Morris, the operations manager of the arena, stated that (1) MOA/Ogden did not own or lease any portable scoreboards in 1994; (2) he was aware that Carrs occasionally used its own portable scoreboard at the Shootout games; (3) MOA/Ogden had no contract with Carrs for the maintenance, use, operation, transportation, or storage of the scoreboard; and (4) MOA/Ogden neither actually controlled nor had the right to control the loading operation.

McGlothlin offered no evidence disputing these factual assertions. Rather, when deposed, McGlothlin stated that after the scoreboard was rolled out to the service ramp, he and his co-worker were left alone to load it, without direction or assistance from any MOA/Ogden employees. Thus, he confirmed that MOA/Ogden retained no actual control over the loading operation. He further admits that MOA/Ogden provided no loading equipment, and that he did not ask for any assistance until after he was injured, with the exception of a "help me" glance he gave one Ogden employee after he began loading the scoreboard. Finally, McGlothlin admits that the loading area was clean, dry, and free from debris.

Like *Brock*, the record here is devoid of any evidence that the defendants owed a

---

**13.**  640 P.2d 833 (Alaska 1982).

**14.**  *See id.* at 834.

**15.**  *Id.*

**16.**  *See id.*

**17.**  *See id.* at 834–35.

**18.**  *See id.* at 836.

**19.**  *See id.* at 837.

duty of care to the plaintiff. The uncontroverted affidavits MOA/Ogden submitted and McGlothlin's own testimony establish that the scoreboard was the property of McGlothlin's employer, Carrs; that only employees of Carrs were involved in loading the scoreboard until McGlothlin was injured and requested assistance from an Ogden employee; that MOA/Ogden employees exercised no ac-·tual control nor had a contractual right to control the loading operation; and that McGlothlin's injury resulted from his own actions in loading the scoreboard. On this record, the only reasonable conclusion is that MOA/Ogden did not owe McGlothlin a duty of care.

### 2. *McGlothlin's tort theories*

As previously indicated, McGlothlin argues that factual disputes exist as to whether MOA/Ogden owed him a duty under four theories of liability: (1) retained control, (2) voluntary assumption of a duty, (3) simple negligence, and (4) negligent entrustment. His arguments lack merit.

▆▆▆ McGlothlin's "retained control" argument fails because there was no independent contractor-employer relationship between Carrs and MOA/Ogden. In order for a duty to arise under the doctrine of "retained control," there must be an independent contractor-employer relationship between the parties.[20] Here, MOA/Ogden offered uncontroverted testimony establish-

ing that no independent contractor-employer relationship existed between itself and Carrs, either express or implicit. Therefore, the "retained control" theory is not available to McGlothlin.[21]

▆▆▆ McGlothlin next contends that MOA/Ogden's failure to assist in or supervise the loading operation, and its failure to warn him of the scoreboard's weight, raise factual disputes which preclude summary judgment. This argument, too, is without basis in the record. There is no evidence that MOA/Ogden voluntarily assumed any duty to McGlothlin. Rather, the evidence indicates they delivered the scoreboard to him and left him and Lulay alone to load it themselves. Nevertheless, McGlothlin argues that the assistance given him by the third Ogden employee after he was injured indicates that MOA/Ogden had a duty to assist him initially. This argument is circular and lacks merit. While it is true that "one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully[,]" [22] it is not true that rendering assistance after an injury occurs implies a duty to do so. MOA/Ogden had no duty to assist McGlothlin. As to warning McGlothlin of the scoreboard's weight, McGlothlin admits he removed the scoreboard from the rack prior to loading it into the truck and was aware of its weight. MOA/Ogden had no duty to warn McGlothlin of an open and obvious condition of which McGlothlin was aware.[23]

▆▆▆ Finally, McGlothlin's argument that a factual dispute exists as to whether

---

**20.** We expressly adopted the Restatement (Second) of Torts § 414 (1965) when we approved of the "retained control" theory of negligence. *See Moloso v. State*, 644 P.2d 205, 210–11 n. 3 (Alaska 1982) (listing cases). This section provides:

> Negligence in Exercising Control Retained By Employer. One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

**21.** The superior court held that Carrs was an independent contractor of MOA/Ogden for the purpose of providing a scoreboard for use at the Sullivan Arena, and thus the "retained control" theory applied. However, the court also found

that the evidence showed that MOA/Ogden retained no control over the loading of the scoreboard, and thus MOA/Ogden did not owe McGlothlin a duty under this theory. We agree with this result, but for the reason expressed here. We may affirm a judgment of the superior court on different grounds than those advanced by the superior court. *See Lazy Mtn. Land Club v. Matanuska–Susitna Bor. Bd. of Adjustment and Appeals*, 904 P.2d 373, 381 n. 45 (Alaska 1995) (quotation marks and citation omitted).

**22.** *See Moloso*, 644 P.2d at 212 (citations omitted).

**23.** *Cf. West v. City of St. Paul*, 936 P.2d 136, 138–39 (Alaska 1997) (holding wharfinger has no duty to warn of open and obvious conditions that can be reasonably ascertained by vessel crew);

MOA/Ogden negligently entrusted[24] the scoreboard to him fails because the doctrine of negligent entrustment requires that the defendant have a greater right of possession or control of the chattel than the person to whom he or she entrusts it.[25] MOA/Ogden was returning the scoreboard to its rightful owner, Carrs. MOA/Ogden could not lawfully refuse to hand over the scoreboard. Therefore, the doctrine of negligent entrustment is not available to McGlothlin.[26]

In sum, the superior court correctly found that there were no genuine issues of material fact under any of the theories of liability propounded by McGlothlin, and that MOA/Ogden was entitled to judgment as a matter of law.

**B.** *The Superior Court Did Not Abuse Its Discretion in Awarding Attorney's Fees.*

██ Applying Civil Rule 82(b), the superior court awarded MOA/Ogden $4,242.50, or twenty percent of the $21,212.50 in fees that MOA/Ogden showed that it had incurred.[27] McGlothlin contends that the superior abused its discretion in failing to vary the award under Rule 82(b)(3) because the fees MOA/Ogden incurred were excessive and would deter similarly situated plaintiffs from the voluntary use of the courts.[28] Our review of the record indicates that the fees were reasonable, and not so onerous as to

deter those who come forward in good faith with a complaint. We therefore affirm the trial court's attorney's fees award.

**V. CONCLUSION**

MOA/Ogden made a prima facie case that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. McGlothlin failed to submit evidence which tended to dispute or contradict this evidence, or to demonstrate that MOA/Ogden was not entitled to judgment as a matter of law. Additionally, the superior court's award of attorney's fees was not an abuse of discretion. We therefore AFFIRM.

*Prince v. Parachutes, Inc.*, 685 P.2d 83, 88 (Alaska 1984) (citation omitted) (holding manufacturer has no duty to warn of hazards or dangers that would be readily recognized by an ordinary user of the product).

24. Under this theory, "[o]ne who supplies ... a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk to himself and others ... is subject to liability for physical harm resulting to them." *Neary v. McDonald*, 956 P.2d 1205, 1208 (Alaska 1998) (citing *Restatement (Second) of Torts* § 390 (1965)).

25. *See id.* at 1209 (citations omitted).

26. In addition, McGlothlin failed to introduce any evidence to show that the Ogden employees

should have known he was incapable of loading the scoreboard.

27. Rule 82(b)(2) provides, in part, that "[i]n cases in which the prevailing party recovers no money judgment, the court shall award the prevailing party ... in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred."

28. Rule 82(b)(3) allows the trial court to vary an attorney's fees award based upon a number of factors, including the complexity of the litigation, the reasonableness of the attorneys' hourly rates, the number of attorneys, and the hours expended, as well as the potential that a fee award may be so onerous as to deter similarly situated litigants from the voluntary use of the courts.