## A89A2225. SPENCE v. CITIZENS & SOUTHERN NATIONAL BANK.

(393 SE2d 1)

McMURRAY, Presiding Judge.

Albert L. Spence, Jr. (plaintiff) sued The Citizens & Southern National Bank (defendant), as the executor of the Estate of Ernest C. Kessler, to recover for personal injuries he allegedly sustained when the "mezzanine" floor of a building owned by the Kessler estate "collapsed." Defendant denied the material allegations of the complaint and filed a motion for summary judgment. In support of this motion, defendant relied on the affidavit of Janey Cooley, "the Administrative Officer . . . responsible for the management of [the Kessler] Estate . . . ," and plaintiff's deposition.

On July 1, 1983, plaintiff's employer, Coastal Supply Company, Inc. ("Coastal"), leased the building from defendant for use in its heating and air conditioning business. The lease agreement placed the burden of building repair and maintenance upon Coastal and provided Coastal's acceptance of the leased premises "in their present condition. . . ."

The leased premises included a "three or four thousand square . . ." foot storage warehouse with "about [an] eighteen or twenty foot ceiling. . . ." Suspended about eight feet from the concrete floor and surrounding most of the warehouse interior perimeter wall was a wood "mezzanine." The "mezzanine" was constructed with "2x4" framing and it had a "pressboard" floor. A wood stairwell provided access to the "mezzanine."

Coastal used the "mezzanine" for light storage and, as part of his work duties, plaintiff regularly traversed the "mezzanine" to store and retrieve parts. Plaintiff became aware that the "mezzanine" was defectively constructed as he "could feel the [pressboard] floor give when [he] walked across it." Plaintiff informed his employer on several occasions that the "mezzanine" floor was "flimsy" and that it needed to be "fixed." In fact, plaintiff warned that "someone was going to get hurt if the floor wasn't fixed."[1] Nonetheless, the "mezza-

---

[1] The record shows that plaintiff only informed his employer of the poorly constructed

nine" was not reinforced and on February 26, 1986, plaintiff was injured when he fell through the "pressboard" floor after retrieving parts for his employer.

"Upon full consideration of the entire record," the trial court granted defendant's motion for summary judgment, finding "that Plaintiff was abundantly aware of the defective condition of the floor of the mezzanine, and that his knowledge of that condition was actually superior to Defendant's knowledge of the condition." This appeal followed: *Held*:

1. A landlord's liability to third persons who are lawfully on leased premises is set out in OCGA § 44-7-14. This Code section provides as follows: "Having fully parted with possession and the right of possession, the landlord is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant; provided, however, the landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair."

In applying OCGA § 44-7-14, the Supreme Court recently restated that "[t]he liability of a landlord for defective construction exists only in cases where the structure is built by him in person or under his supervision or direction. *If a building were defectively constructed by a predecessor in title, and the landlord knew or by the exercise of reasonable diligence could have known of its improper construction before the tenancy was created, he would be answerable to the tenant, or to any one lawfully on the premises by invitation of the tenant, for injuries sustained by reason of his failure to put the premises in a safe condition, if the person sustaining the injuries could not have avoided the same by the exercise of ordinary care.* (Emphasis supplied.) *Ross v. Jackson*, 123 Ga. 657, 659 (51 SE 578) (1905)." *Flagler Co. v. Savage*, 258 Ga. 335, 337 (2) (368 SE2d 504).

In the case sub judice, Janey Cooley admitted in the affidavit relied upon by defendant that the "mezzanine" was "in place at the time [defendant] leased the building to [Coastal]." This evidence is sufficient to raise genuine issues of material fact as to defendant's knowledge of the allegedly defective "mezzanine." "Ordinarily, the landlord will be chargeable with notice of conditions which existed prior to the time that the tenant takes possession." Restatement of the Law, Second, Property 2d, § 17.6, Comment (c).

This brings us to the question of whether evidence of plaintiff's knowledge of the "flimsy" floor bars his recovery. "The fact that the tenant or another on leased property with his permission is aware of

---

"mezzanine." Janey Cooley stated in the affidavit relied upon by defendant that defendant never "received any notice from anybody, at any time, either written or oral, of any kind of defect or maintenance problem with respect to the mezzanine level located in that building."

the dangerous condition of the leased property does not in and of itself mean that [the landlord's statutory duty to inspect and repair unsafe rental property is] inapplicable. . . . The landlord remains subject to liability to the tenant or to others on the leased property with the tenant's consent, but he has available all the usual defenses to an action in negligence, including contributory negligence and assumption of risk. . . ." Restatement of the Law, Second, Property 2d, § 17.6, Comment (b).[2] See *Thompson v. Crownover*, 259 Ga. 126, 129 (5) (381 SE2d 283). It therefore follows that in the case sub judice the trial court erred in granting defendant's motion for summary judgment as genuine issues of material fact remain as to defendant's knowledge of the alleged defect which caused plaintiff's injuries or whether defendant failed to exercise ordinary and reasonable care in discovering the defect. Genuine issues of material fact also remain as to plaintiff's knowledge of the alleged defect, i.e., whether plaintiff appreciated the risk associated with walking on the "mezzanine," and, if so, whether he assumed the risk, acting negligently in traversing the "pressboard" floor.[3]

2. Defendant argues that provisions of the lease contract which place the duty of maintenance and repair primarily with the tenant relieve it of liability to third persons for the allegedly defective maintenance and construction of the "mezzanine" floor. This argument is without merit. Lease contract provisions which relieve "the defendant landlord of the obligation to keep the premises in repair, [are not] effective as against third persons lawfully on the premises, even if the tenant knew of the defective condition. *Birdsey v. Greene*, 176 Ga. 688 (168 SE 564) (1933)." *Flagler Co. v. Savage*, 258 Ga. 335, 337 (2), supra.

---

[2] The Restatement of the Law, Second, Property 2d, § 17.6, Comment (g), p. 234, provides that "[i]nsofar as an implied warranty of habitability is concerned, no position is taken as to whether the rule [of a landlord's liability for physical harm caused by a dangerous condition existing before or arising after the tenant has taken possession] applies to property leased for commercial purposes. . . ." In Georgia, a landlord's duty to lease premises which are safe enough to withstand the intended and ordinary use is not implied, it is prescribed under OCGA § 44-7-14 and this Code section does not distinguish a landlord's duty with regard to the rental of commercial property from these duties associated with the rental of residential property.

[3] In *Crownover*, Justice Hunt points out in a special concurrence that the tenant's awareness of the alleged defect would normally have cut off the landlord's liability, but that the "rule of necessity," i.e., what was the tenant's option for use of the defective space heater, was an excuse for submitting the case to the finder of fact. Such "case by case" analysis has traditionally been the rule for determining whether genuine issues of material fact remain as to a landlord's liability. See *Thompson v. Crownover*, 186 Ga. App. 633, 640 (2) (368 SE2d 170). Now, it appears that circumstances such as the landlord's knowledge of defective conditions (intentional or negligent failure to repair), the tenant's or the invited third parties' knowledge and appreciation of dangerous conditions on leased premises and "necessity" will be factors reserved solely for the finders of fact. *Thompson v. Crownover*, 259 Ga. 126, supra.

*Judgment reversed. Carley, C. J., Banke, P. J., Pope and Cooper, JJ., concur. Deen, P. J., Birdsong, Sognier and Beasley, JJ., dissent.*

BEASLEY, Judge, dissenting.

This case involves a mezzanine or balcony which was not constructed by the landlord which the landlord did not possess or control the use of.

The deposition shows without dispute that plaintiff had knowledge of the defect through repeated daily use for two years and that he appreciated the danger it posed. He himself said this, and that he complained about the condition and warned his employer that someone would be injured if the weakness in the floor was not corrected. He walked as lightly as he could, but he weighed about 240 pounds.

Considering the entire record, it is conclusive that plaintiff had at least equal, if not superior, knowledge of the claimed defect and its hazardous nature.

The "if" pointed to by the Supreme Court in *Flagler Co. v. Savage*, 258 Ga. 335, 337 (368 SE2d 504) (1988), quoting from *Ross v. Jackson*, 123 Ga. 657, 659 (51 SE 578) (1905), is not present in this case. Plaintiff cannot recover because he "could . . . have avoided the [injury] by the exercise of ordinary care."

I am authorized to state that Presiding Judge Deen and Judge Birdsong join in this dissent.

DECIDED FEBRUARY 26, 1990 —
REHEARING DENIED MARCH 30, 1990 —

*Ray B. Burruss, Jr., Joseph C. Iannazzone*, for appellant.
*Bentley, Karesh, Seacrest, Labovitz & Campbell, Gary L. Seacrest, Karsten Bicknese*, for appellee.