**Nanette SAUVE, Appellant,**

v.

**Dennis M. WINFREE and Bill H. Nix, Appellees.**

**No. S–6478.**

Supreme Court of Alaska.

Nov. 17, 1995.

James T. Brennan, Hedland, Fleischer, Friedman, Brennan & Cooke, Anchorage, for Appellant.

Daniel T. Quinn, Richmond & Quinn, Anchorage, for Appellees.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

### OPINION

COMPTON, Justice.

## I. INTRODUCTION

Nanette Sauve was injured in a fall down a staircase at her corporate employer's place of business. Dennis Winfree and Bill Nix are shareholders in and officers of the corporation. Winfree and Nix also own the building that houses the business, but do so through a partnership that they own in its entirety. Although Sauve collected workers' compensation benefits for her injury, she brought suit in superior court against Nix and Winfree, alleging that they had breached their duty as landlords. Nix and Winfree responded that the exclusive remedy provision of Alaska's Workers' Compensation Act made them immune as individuals due to their status as Sauve's co-employees. Sauve appeals from the court's ruling that the exclusive remedy provision of the Act bars her suit against Winfree and Nix as individuals based on their co-employee status. We reverse.

## II. FACTS AND PROCEEDINGS

Winfree and Nix are shareholders and officers of a corporation. Both also work full-time for the business. Winfree is the corporation's president; he focuses on marketing and oversight of business operations. Nix is the corporation's secretary and treasurer; his responsibilities include management of wholesale business operations.

Winfree and Nix also own the building that houses the business, but not through the corporation. Rather, they own the building through a partnership in which they are the only partners.

Sauve, a corporate employee, was injured while working at the building. Sauve damaged her knee in a fall down a staircase that she describes as "steep" and "winding" with "fan-shaped steps." Due to her fall, Sauve collected workers' compensation benefits.

Despite collecting these benefits, Sauve filed suit against Winfree and Nix as individuals. She asserted that as owners of the building, Winfree and Nix were negligent in permitting the staircase to be utilized in a condition that she characterizes as "defective." Specifically, Sauve maintains that the condition of the staircase was a structural flaw that was the responsibility of Winfree and Nix to remedy in their role as landlords.

Winfree and Nix moved for summary judgment, maintaining that the exclusive remedy provision of the Act insulated them from liability since they were Sauve's co-employees. See AS 23.30.055. The court entered summary judgment in favor of Winfree and Nix. The court decided that the scope of co-employee liability was to be determined by focusing upon whether Sauve's injury occurred in the scope of her employment. The court observed that this court had rejected the dual-capacity doctrine in the context of an injured worker suing his employer after collecting compensation benefits. It concluded that this rejection applied with equal force to the instant case, where an employee who had received workers' compensation benefits was suing her co-employees. The court also adopted the reasoning of Justice Burke's dissent in *Elliott v. Brown*, 569 P.2d 1323 (Alaska 1977) (Burke, J., dissenting in part), which concluded that the statutory language mandated that workers' compensation benefits were the exclusive remedy, and that any actions against co-employees were barred. Additionally, the court ordered Sauve to compensate Winfree and Nix for almost $2,500 in attorney's fees. Sauve appeals.

## III. DISCUSSION

### A. Standard of Review

The parties agree that the issue before the court is a matter of statutory

interpretation. "The interpretation of a statute is a question of law which involves this court's independent judgment." *Odum v. University of Alaska, Anchorage*, 845 P.2d 432, 434 (Alaska 1993). "Our duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

## B. *Does the Statute Bar Sauve's Claim?*

■ Alaska Statute 23.30.055 provides that "[t]he liability of an employer prescribed in AS 23.30.045 is exclusive and in place of all other liability of the employer and *any fellow employee* to the employee." (Emphasis added.)

This court has previously employed a narrow reading in interpreting the exclusive remedy provision. In *Elliott v. Brown*, 569 P.2d 1323 (Alaska 1977), we concluded that despite the statutory language granting co-employees immunity, a fellow employee committing an intentional tort "can be considered to be outside the purview of the statute and can be treated as a third person" subject to liability. *Id.* at 1327. In reaching this conclusion, the *Elliott* court considered, *inter alia*, the "socially beneficial purpose of the workmen's compensation law" and public policy concerns. *Id.*

Both the superior court and Winfree and Nix, in adopting the position that the statutory language makes Winfree and Nix immune, rely on Justice Burke's partial dissent in *Elliott*. *Id.* at 1328 (Burke, J., dissenting in part). Justice Burke argued that the statutory language was "too plain to be misunderstood." *Id.* He maintained that the legislature had spoken and that the remedy provided by the statute precluded all others. *Id.*

Justice Burke's dissent was precisely that: a dissent. Nevertheless, the court relied on the dissent, stating that *Elliott* was to be limited to intentional tort situations. In *Elliott* this court rejected the argument that co-employee immunity was absolute: the statutory language alone was not determinative. As in *Elliott*, policy concerns and the purpose of the legislation indicate that the statutorily-provided immunity should not extend to all acts of persons who happen to be co-employees.

## C. *Does This Court's Rejection of the Dual–Capacity Doctrine Bar Sauve's Claim?*

In *State v. Purdy*, 601 P.2d 258, 260 (Alaska 1979), this court explicitly rejected the dual-capacity doctrine. We held that an employee could not sue her *employer* for a work-related injury by alleging that the employer was liable in tort as a result of having breached a duty "independent and distinct from his role as an employer." *Id.* at 259. In accordance with the superior court's holding, Winfree and Nix argue that this rejection should also apply to an attempt to sue a co-employee for an injury that is work-related. They rely principally on cases from other jurisdictions that have addressed the issue of a landowner who also is employed in some capacity by the entity that uses the land. These cases hold that workers' compensation remedies are the exclusive remedy available to an injured worker in an action against the landowner. *See, e.g., Heritage v. Van Patten*, 59 N.Y.2d 1017, 466 N.Y.S.2d 958, 959, 453 N.E.2d 1247, 1248 (1983). However, only one of the cases Winfree and Nix cite reaches its result through reliance on, or analogy to, the dual-capacity doctrine; even in that instance discussion of the doctrine was cursory and approached dicta. *See Watson v. G.C. Assocs. Ltd. Partnership*, 100 Nev. 586, 691 P.2d 417, 418–19 (1984).

This is not a surprising result, given that the application and subsequent rejection of the dual-capacity doctrine do not relate to co-employee liability. The dual-capacity doctrine deals with *employer* liability for an employee's injuries. The leading treatise on workers' compensation offers this commentary on the dual-capacity doctrine:

> [Only] a few courts have stretched the doctrine so far as to destroy employer immunity whenever there was, not a separate legal person, but merely a separate relationship or theory of liability. When one considers how many such added relations an employer might have in the course of a day's work—as landowner, land occupier, products manufacturer, installer, mo-

difier, vendor, bailor, repairman, vehicle owner, shipowner, doctor, hospital, health services provider, self-insurer, safety inspector—it is plain to see that this trend could go a long way toward demolishing the exclusive remedy principle.

2A Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation* § 72.81(a), at 14–290.89 (1994). In *Purdy*, this court offered a very similar observation:

> There are endlessly imaginable situations in which an employer might owe duties to the general public, or to non-employees, the breach of which would be asserted to avoid the exclusive liability provision of our statute.

*Purdy*, 601 P.2d at 260. It can be envisioned that *some* of these duties might be imputed to an employee, and liability potentially imposed as a result of a breach. However, the liability would not range over the same breadth of duties as it would were liability to be imposed on the umbrella, employing entity. This circumstance mitigates the effect of imposition of liability on co-employees for roles outside the course of their normal employment.

### D. *The Choice of Business Organization Form*

The circumstance of separate legal entities owning the business and its premises also has ramifications. Granting co-employee immunity in this case would produce a tension in the workers' compensation law of this state. In *Croxton v. Crowley Maritime Corp.*, 817 P.2d 460 (Alaska 1991), this court rejected the argument that the exclusive remedy provision barred an employee of a subsidiary from asserting a claim against the parent corporation based on the negligence of the parent's employee. *Id.* at 462, 467. The *Croxton* court made it clear that a decision to utilize the corporate form necessitated accepting the costs with the benefits: " '[P]ersons who choose to become incorporated may not evade the consequences of corporateness when that would suit their convenience.' " *Id.* at 464 (quoting H. Henn

& J. Alexander, *Laws of Corporations* § 149, at 357 (3d ed. 1983)).

This is precisely what Winfree and Nix seek to do. They elected to have two different business organizations own the real estate and the business; presumably there were advantageous aspects to this structure, yet now they carefully disclaim the assertion of employer immunity. *Croxton* prevents this argument from prevailing. Winfree and Nix attempt to use a back door to "evade the consequences of corporateness [to] suit their convenience," utilizing the co-employee immunity provision to do what *Croxton* prevents.[1]

There is an additional policy concern that is highlighted by a dissent to perhaps the strongest authority Winfree and Nix cite in support of affirming co-employee immunity. In *Heritage v. Van Patten*, 59 N.Y.2d 1017, 466 N.Y.S.2d 958, 453 N.E.2d 1247 (1983), the court held that the exclusive remedy provision of that state's workers' compensation law barred a co-employee/landowner's liability under a statute that imposed a duty on the property owner. The court reasoned that the landowner "remains a coemployee in his relations with plaintiff in *all* matters arising from and connected with their employment." *Id.* 466 N.Y.S.2d at 959, 453 N.E.2d at 1248 (emphasis added). One judge dissented, stating that such a result would "encourage landowners to become 'paper' coemployees as a device to avoid their statutory duties." *Id.* at 960, 453 N.E.2d at 1249 (Cooke, C.J., dissenting). Holding Nix and Winfree immune in this case would encourage future similar tactics to "evade the consequences of corporateness", while allowing similarly situated individuals to reap the benefits of this business organization structure.

### E. *To What Extent May Co-Employees Be Liable?*

#### 1. *The scope of co-employee immunity in general*

The statutory language and this court's rejection of the dual-capacity doctrine do not dictate absolute co-employee immunity in

---

**1.** In *Perkins v. Scott*, 554 So.2d 1220 (Fla.Dist. App.1990), the court rejected for precisely this reason a co-employee/shareholder's argument

that he should be immune as a landlord due to co-employee immunity. *Id.* at 1222.

this situation, but there still remains the issue of how far any liability should extend. At some point denial of immunity impermissibly encroaches on the purpose of workers' compensation.

Larson offers the following rationale for co-employee immunity:

The reason for the employer's immunity is the *quid pro quo* by which the employer gives up his normal defenses and assumes automatic liability, while the employee gives up his right to common-law verdicts. This reasoning can be extended to the tortfeasor coemployee; he, too, is involved in this compromise of rights. Perhaps, so the argument runs, one of the things he is entitled to expect in return for what he has given up is freedom from common-law suits based upon industrial accidents in which he is at fault.

2A Larson & Larson, *supra* § 72.22, at 14–152 (1994).

It is difficult to reach the conclusion that such a purpose includes a co-employee who might incur liability due to his or her ownership of the corporation's premises. Freedom from liability due to premises ownership takes on the character of a "bonus" in the context of co-employee immunity. In the tradeoff Larson describes the co-employee would seem to receive two benefits in exchange for relinquishing his common law action due to a work-related injury: (1) assured compensation for an injury he may sustain on the job and (2) freedom from liability for any such injury he may cause to a fellow employee.

■ The determinative question then becomes what is the scope of the second benefit. That is the central inquiry in this case. Larson offers an answer to this question, yet in the process poses a subordinate inquiry:

It must be observed that the immunity attaches to the coemployee only when the coemployee is acting in the course of his employment. This is consistent with the justification for the immunity . . . since the coemployee's employment status does not increase the risk of his causing nonindustrial injuries to his fellow-workers.

The commonest question that arise[s] in these cases is: which test of "course of employment" applies? Is it the workmen's compensation test, or the vicarious liability test?

2A Larson & Larson, *supra* § 72.23, at 14–154 to –168 (footnote omitted). Larson indicates that the preferable test, unless statutorily ruled out, is the "regular workmen's compensation course of employment standard." *Id.* at 14–171 to –174. It eliminates the need to add yet another test, and a line of precedent is already available. *Id.* at 14–173 to –176.

This court's regular workers' compensation "course of employment" standard is that an injury must have "arisen out of and in the course of . . . employment." *Northern Corp. v. Saari*, 409 P.2d 845, 846 (Alaska 1966). We have explained that the test may be more precisely articulated as " 'if the accidental injury or death is connected with any of the incidents of one's employment, then the injury or death would both arise out of and be in the course of such employment.' " *M–K Rivers v. Schleifman*, 599 P.2d 132, 134–35 (Alaska 1979) (quoting *Northern Corp.*, 409 P.2d at 846). "Incident" is defined as "[s]omething dependent upon, appertaining or subordinate to, or accompanying something else of greater or principal importance." Black's Law Dictionary 762 (6th ed. 1990). Under this test, ownership of the building cannot be considered a consequence of (*i.e.*, subordinate to) the co-employees' employment. Hence, co-employee immunity would not shield Winfree and Nix from liability. This is as it should be. Otherwise Winfree and Nix would be permitted to insulate their assets through workers' compensation law, when business organization principles will not allow them to accomplish this result. *See Cusano v. Staff*, 154 Misc.2d 109, 583 N.Y.S.2d 354, 355 (N.Y.Sup.Ct.1992), *aff'd*, 191 A.D.2d 918, 595 N.Y.S.2d 248 (1993).

While Larson prefers this regular workers' compensation "course of employment" standard for determining the extent of co-employee immunity, he also acknowledges that courts employ other standards. 2A Larson & Larson, *supra* § 72.23, at 14–168 to –170.

This is where the true division of thought among jurisdictions arises in this case, which allows both sides to cite precedent squarely in their favor. The superior court focused on the language of the exclusive remedy provision and its reference to "the injury." It concluded, in accordance with the legislation's definition of that phrase, that the test was to be based on whether the injury occurred in the scope of the *plaintiff's* employment. AS 23.30.055; AS 23.30.265.

Winfree and Nix cite *Heritage v. Van Patten*, 59 N.Y.2d 1017, 466 N.Y.S.2d 958, 453 N.E.2d 1247 (1983), and a line of cases adopting a similar rationale, for the absolute statement that where a landowner is employed by the business that operates from his or her premises, "[r]egardless of his status as owner of the premises where the injury occurred, [the owner] remains a coemployee in his relations with plaintiff in all matters arising from and connected with their employment." *Id.* at 959, 453 N.E.2d at 1248; *see also Watson v. G.C. Associates Limited Partnership*, 100 Nev. 586, 691 P.2d 417 (1984) (citing *Heritage* for proposition that an individual's immunity under the act is unaffected by their status as landlords of the business); *Kimball v. Millet*, 52 Wash.App. 512, 762 P.2d 10, 11 (1988) (adopting *Heritage* 's reasoning); *cf. Jackson v. Gibson*, 409 N.E.2d 1236, 1238–39 (Ind.App.1980) (holding co-employee/building owner immune based solely on statutory language and the fact that he had duty of supervising injured plaintiff); *Varland v. Smith*, 112 Or.App. 271, 828 P.2d 1053, 1054 (1992) (holding co-employee/equipment owner immune based solely on statutory language and the fact that he had duty of supervising injured plaintiff), *appeal denied*, 313 Or. 628, 835 P.2d 917 (1992).[2] The *Heritage* court rested its conclusion on the express statutory language of that state's workers' compensation law granting co-employees immunity. *See Heritage*, 466 N.Y.S.2d at 959, 453 N.E.2d at 1248.

The *Heritage* court, and those following its rationale, did not explore the meaning of "course of employment." *See, e.g., id.* One New York court later noted that the defendant in the case before it read *Heritage* too broadly. *Cusano v. Staff*, 191 A.D.2d 918, 595 N.Y.S.2d 248, 249 (1993). The court remarked that, like Larson's suggested approach, "[c]oemployee immunity is only justified when the tortfeasor's conduct is within the course of employment; otherwise, the coemployee's employment status is unconnected to the risk of injury to the fellow-worker from an industrial accident." *Id.* at 249. Furthermore, *Heritage* does not contemplate policy concerns, an approach that this court has previously embraced in interpreting workers' compensation provisions. *See Elliott v. Brown*, 569 P.2d 1323, 1327 (Alaska 1977). Therefore, we reject *Heritage* and cases adopting its rationale as too limited in their perspective.

One of the cases cited by Winfree and Nix takes the approach Larson suggests. In *Henderson v. Meredith Lumber Co.*, 190 W.Va. 292, 438 S.E.2d 324 (1993), the court went to some effort to detail and distinguish the defendant's responsibilities and actions as a landlord versus employee. *Id.* 438 S.E.2d at 331. The court examined the co-employee/landowner's allegedly tortious conduct and concluded that he was not liable, because the act had occurred in his capacity as an employee of the corporation. *Id.* 330–31. Had the defendant acted in his capacity as landlord, liability would have been imposed. *Id.* Likewise, the strongest cases Sauve offers in support of her position also endorse this approach. *See Perkins v. Scott*, 554 So.2d 1220, 1221 (Fla.Dist.App.1990) (holding that a co-employee/building owner enjoys co-employee immunity only in the "relationship as fellow employees in the course and scope of . . . mutual employment"; re-

---

**2.** In interpreting Alaska's exclusive liability provision in *Gordon v. Burgess Construction Co.*, 425 P.2d 602 (Alaska 1967), this court quoted another case from New York that also utilized the standard employed in *Heritage:*

In substituting certainty of compensation for the hazards of litigation of work-connected injuries, it is too clear to require discussion that

the act was intended to comprehend and govern *all* the interacting relations of the employee, fellow employee and employer.

*Id.* at 605 (quoting *Frick v. Horton*, 21 A.D.2d 212, 250 N.Y.S.2d 83, 85 (1964), *aff'd*, 15 N.Y.2d 1018, 260 N.Y.S.2d 26, 207 N.E.2d 618 (1965)) (emphasis added). However, in *Gordon* this court was addressing employer immunity.

tained duties as building owner are not protected by immunity); *Knowlton v. Tranter,* 672 P.2d 686, 689 (Okla.App.1983) (holding that although injury sustained on employer's premises in course of employment, tortious product modification by co-employee had no relationship to common employment and co-employee immunity was not applicable).

We find the latter group of cases more persuasive, and accordingly adopt the test endorsed by Larson. This court has already concluded that co-employee immunity is not co-extensive with all interaction between coworkers, as the statutory language might suggest. *Elliott v. Brown,* 569 P.2d 1323, 1327 (Alaska 1977). The trade-off contemplated by including the interaction of co-employees in the workers' compensation scheme is not intended to insulate them from *all* industrial accident liability, but only from that arising from the "course of employment." For the reasons Larson suggested, the test for "course of employment" must parallel our other pronouncements in the workers' compensation area. 2A Larson & Larson, *supra* § 72.23, at 14–171 to –174. Immunity is designed to cover only injuries "incident" (*i.e.,* subordinate) to the co-employee's employment, and not harm to others that results from the breach of a duty arising independent of the defendant's status as a co-employee.

### 2. *Separation of the various duties of co-employees who occupy other roles*

What is necessitated in the instant case is further inquiry into the cause of Sauve's injuries. If, as she alleges, it was the structure of the staircase that caused her injuries and landlord liability would normally attach in such a case, then Winfree and Nix should be held liable to the extent of landlords that

were not otherwise involved with Sauve's employment. It is true that if the corporation owned the building, then Sauve could not collect further damages, but this is not the case. Winfree and Nix took the advantages of ownership through various forms of business entities and now must live with the detriments as well. However, if the cause of her injury is rooted in *corporate* duties negligently performed by Winfree and Nix in terms of their supervision of Sauve, or their corporate responsibility for the condition of the premises, then the exclusive remedy provision would bar payment of further damages resulting from duties performed "incident" to employment. This separation requires further trial inquiry.

This solution is somewhat analogous to a "dual persona" theory. *See* 2A Larson & Larson, *supra* §§ 72.80–.81, at 14–290.88 to – 290.111. The competing considerations outlined demand that Winfree and Nix as corporate employees be treated differently from Winfree and Nix as partners.[3] Therefore, since the personae are being treated differently, rationales accompanying the doctrine are persuasive.

To again borrow a phrase from Larson, if "additional duties [arising from the landlord's obligation] are *inextricably intertwined* with those of the [co-employee] status," 2A Larson & Larson, *supra* § 72.81(c), at 14– 290.109 (emphasis added), then the co-employee remains immune.[4] The test of "inextricably intertwined" may require detailed examination on the part of the superior court, but it will allow co-employee immunity to be retained where it should be, and not shed each time a creative plaintiff can imagine an additional role that would result in liability. At the same time, it will not permit landlords to effectively step in and out of the

---

**3.** This is not an implicit adoption of the dual-capacity doctrine. In that situation immunity has attached to the employer, but liability is imposed due to that employer's actions in a different capacity. *See Purdy,* 601 P.2d at 259. With Winfree and Nix, immunity may never have attached: the negligence Suave alleges occurred outside the range of actions covered by co-employee immunity. Therefore, the fact that Winfree's and Nix's legal identities are the same as individuals and as members of the partnership is of no consequence in this case.

**4.** One New York case has indicated that this was the way the *Heritage* test should be interpreted, remarking that in *Heritage* and its progeny co-employee immunity existed because "the defendant had indistinguishable responsibilities, as an executive employee and as a property owner, for safety precautions to avoid the plaintiff's injury." *Cusano v. Staff,* 191 A.D.2d 918, 595 N.Y.S.2d 248, 250 (1993).

corporate shell as it suits their needs. Such an approach should encourage care on the part of landlords, yet still respect immunity for co-employees acting in the scope of their employment.

## IV. *CONCLUSION*

In this case, it is necessary to strike a balance between statutory language, the purposes of the legislation, and principles of business organization. By holding co-employees liable for responsibilities that are not "incident to" or "inextricably intertwined" with their employment duties, the purposes of the Act's co-employee immunity provision are met.

The judgment of the superior court is REVERSED and the case REMANDED for proceedings consistent with this opinion.[5]

---

**5.** In view of our disposition, the superior court's award of attorney's fees to Winfree and Nix is vacated.