Connors, Thomas A., J.
I. INTRODUCTION
This matter came before the court on a complaint filed by Raquel V. Neal and John Neal (“plaintiffs”) against Purity Supreme, Inc. and Stop & Shop (“defendants”),[3] alleging that Ms. Neal sustained injuries as a result of the defendants’ negligence. On October 14, 2005, the defendants moved for summary judgment asserting that they owed no legal duty to the plaintiffs. For the following reasons, the defendants’ motion for summary judgment is DENIED.
II. BACKGROUND
The facts are summarized in the light most favorable to the plaintiffs. On August 13, 2001, during her first day of work at Paramount Cleaners Inc. (“Paramount”), Ms. Neal fell down an interior staircase within a building at 20 Boston Road, Chelmsford, Massachusetts. Ms. Neal’s fall occurred as the manager of Paramount, Carl Stuart, was demonstrating to Ms. Neal how to use the time clock. When Mr. Stuart stepped away from the time clock, Ms. Neal stepped back and, in doing so, fell backward down an open staircase. As Ms. Neal began to fall, she reached out to grab a handrail along the left side of the stairway. The stairway, however, only had a handrail on the right side. As a result of the fall, Ms. Neal suffered an injuiy to her right arm and received Workers’ Compensation benefits pursuant to G.L.c. 152.
At the time of the accident, the building was owned by the defendant Purity Supreme, Inc. (“Purity") and leased to Paramount. The lessor-lessee relationship between Purity and Paramount was governed by a Third Amendment to the Lease, entered into by both Purity and Paramount on November 11, 1992. The Third Amendment to the Lease was preceded by the original lease dated June 1, 1987, between Purity’s predecessor in interest, Mercado Realty Trust, and Paramount’s predecessor in interest, Richard’s, Inc.
The maintenance and repair obligations of Purity as lessor and Paramount as lessee were set out in the provisions of the original lease, and remained unchanged in the Third Amendment to the Lease. Under Article 8.1 of the lease, Purity agreed to “keep and maintain in good repair . . . the . . . foundation, roof, gutters, downspouts, marquee, structural columns and beams, and exterior walls.” In Article 8.2, Paramount agreed to “keep the Leased Premises in a neat, clean, sanitary condition” and to “keep in good repair ... the entire interior of the Leased Premises including walls and ceilings; the exterior and interior of the store front; all plumbing, electrical, sewage, air conditioning, ventilating and heating equipment and the wiring, pipes, motors and fixtures used in connection therewith; [and] the exterior and interior portions of all doors and windows . . .” Under Article 8.2(4), Paramount further agreed to:
[M]ake alterations and repairs of whatever nature required by applicable laws, ordinances, orders or regulations of any public authority or of any insurer . . . except that the Tenant shall not be required to make any structural alterations or repairs, unless such structural alterations or repairs shall be required as a result of any alterations made by the Tenant, or by any use of the Lease Premises by the Tenant.
III.DISCUSSION I. Standard
The Court will grant summary judgment when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm'r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opponent’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17. If the moving party submits evidence that indicates that the plaintiff cannot demonstrate the essential elements of a claim, summary judgment *660 should be granted. See Kourouvacilis, 410 Mass. at 711-12.
II. Application
In order for liability to be imposed for negligence, it is necessaiy first that the defendant owe the plaintiff a legal duty. Sheehan v. El Johnan, Inc., 38 Mass.App.Ct. 975, 975-76 (1995) (“Control over the area where the injury occurred is the traditional analytical tool for determining whether landlord or tenant is liable for the hurt, but the more fundamental question is: does the defendant owe a duty of care to the plaintiff who is claiming injury and damages?”). In the context of a commercial lease, “a landlord has a duty to keep the premises in safe condition, with attendant liability if he does not, only if (1) he has undertaken to do so under the terms of the lease or (2) the location of the defect that caused injury was in a common or other area appurtenant to the leased premises ‘over which the [landlord] had some control.’ ” Id. at 975, quoting Chausse v. Coz, 405 Mass. 264, 266 (1989).
In their motion for summary judgment, the defendants assert that they had no duty to maintain any portion of the interior of the lease premises, and thus cannot be held liable for Ms. Neal’s injuries. In opposition, the plaintiffs contend that the defendants’ duty to maintain the premises in a safe condition arises from the terms of the lease. Relying on Article 8.2(4), the plaintiffs assert that it was Purity’s responsibility under the lease to make structural alterations required by the State Building Code, and that the construction of a handrail in the staircase represents just such a structural alteration. Further, the plaintiffs allege that at the time of Ms. Neal’s fall, the staircase had only one handrail, and therefore did not comply with the State Building Code, 780 Code Mass. Regs. §1014.7, which provides that “[s]tairways shall have continuous guards and handrails on both sides.”
The interpretation of the terms of a lease is a matter of law for the courts. Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002) (“If a contract, in this case a lease, is unambiguous, its interpretation is a question of law that is appropriate for a judge to decide on summary judgment”); Diamond Crystal Brands, Inc. v. Bakldeaf, LLC, 60 Mass.App.Ct. 502, 504-05 (2004). The lease agreement, like any contract, must be interpreted “according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed.” MacArthur v. Mass. Hosp. Serv., Inc., 343 Mass. 670, 672 (1962), quoting Koshland v. Columbia Ins. Co., 237 Mass. 467, 471 (1921).
Under Article 8.2(4) of the lease, Paramount was required to “make alterations and repairs of whatever nature required by applicable laws, ordinances, or orders or regulations,” but was not obligated to make “any structural alterations or repairs, unless such structural alterations or repairs shall be required as a result of any alterations made by [Paramount], or by any use of the Lease Premises by the [Paramount].” In construing the language of Article 8.2(4), it is quite clear that Paramount was only responsible for making structural alterations when its own action necessitated the alteration. It is also apparent that Purity, as the only other party to the lease, was obligated to make the structural alterations in every other situation.
The defendants’ suggestion that Purity’s maintenance obligations were limited to the areas listed in Article 8.1 is unpersuasive. Article 8.1 contains no such limiting language, nor does it reference the terms “structural alteration or repair” used later in Article 8.2(4). Equally unconvincing is the defendants’ contention that the construction of a handrail falls within Paramount’s obligations under Article 8.2, which provides that Paramount is responsible for “keep[ing] in good repair . . . the entire interior of the Leased Premises.” After this quoted language, Article 8.2 specifically lists portions of the interior of the premises to which Paramount’s obligation applies, and nowhere in this list is there a mention of the stairway area. Moreover, this obligation to keep the leased premise in “good repair” connotes that Paramount had a duty to maintain the existing premises in a sound state. This language does not signify that Paramount had a responsibility to construct something that did not previously exist. Instead, Article 8.2(4) is the portion of the lease that plainly governs that type of alteration and repair which would include the construction of a handrail.
The issue then is whether this curative action of constructing a handrail is a structural or nonstructural alteration. See Chausse v. Coz, 405 Mass. 264, 265 (1989) (holding landlord’s failure to maintain low-humidity environment was not a structural defect). If it constitutes a structural alteration, Purity would have been contractually obligated to install it, because there is no evidence that the absence of the handrail was in any way related to an alteration or use of the leased premises on the part of Paramount.
Although the lease does not define the term “structural alteration,” the construction of a handrail is structural in nature, as it requires the affixing of a permanent structural part to the building. See Monterosso v. Gaudette, 8 Mass.App.Ct. 93, 192 (1979) (stating that any efforts to make an area safe by installing a light, constructing of a door, or raising the floor level, constitute “structural repairs” under the terms of the lease); Sauve v. Winfree, 985 P.2d 997, 1001-03 (Alaska 1999) (stating that the fixing of a staircase which exceeded the maximum rise allowable under the building code and contained narrow treads represented structural repair); Pack v. Van Meter, 177 W.Va. 485, 490 (1986) (stating that the failure to maintain a stairway with handrails and safe tread represented structural problems). Therefore, because the construction of a handrail requires a physical alteration of the existing premises, it constitutes a *661 structural alteration, responsibility for which rests upon Purity under Article 8.2(4) of the lease.
In sum, Purity had a duty to keep the premises safe which arose out of its responsibilities under Article 8.2(4) of the lease for structural alterations and repairs. The construction of a handrail within Paramount’s leased premises constitutes such a structural alteration. Based on the summary judgment record, the staircase was not in compliance with governing regulation at the time of the inception of Paramount’s tenancy and at the time of Ms. Neal’s fall. Given the legal basis for possible liability of Purity for negligence arising under the lease, the defendants have failed to demonstrate the absence of a triable issue.
IV. ORDER
For the foregoing reasons, it is hereby ORDERED that summary judgment motion of the defendants is DENIED.

 In April of 2004, Purity Supreme, Inc. was merged into Stop & Shop.